So that we can hear oral argument in this this case. Miss Rudolph, why don't you go ahead and announce the calendar for this afternoon and we'll proceed with argument. 24-1312 Minnesota Joseph Wagner versus Lisa Schreier at all. Okay, we'll hear from the appellate. Mr. Berger. Thank you, your honor. May it please the court, Matthew Berger appearing on behalf of Joseph Wagner. I intend to reserve five minutes for rebuttal as time allows. Okay, now you'll need to pay attention to your time and make sure that you stop in time to reserve that amount of time. Thank you, your honor. Joseph Wagner is a cattleman, a beef farmer in northern Minnesota who has two separate but somewhat related cattle operations. One is a cow-calf operation where he breeds cows to produce calves and that is conducted on pastures. He also has a separate feedlot where calves are taken after they are weaned and fed until they reach market weight and then sold to a processor to produce beef. Mr. Wagner's feedlot is regulated by the Minnesota Pollution Control Agency pursuant to an NPDES permit issued under the Clean Water Act. Mr. Wagner's feedlot is regulated by the Minnesota Pollution Control Agency because Minnesota law specifically prohibits the agency from regulating pastures as feedlots. This case arises because defendants, all career persons employed by the Minnesota Pollution Control Agency, have improperly sought to sidestep the policy decisions enacted by the Minnesota legislature and to improperly assert regulatory authority over Mr. Wagner's pastures. When Mr. Wagner stood up to the state agency and their employees and said that is not what the law says and exercised his constitutional rights to challenge their administrative actions and to petition his legislature to clarify the statute, the defendants in this case retaliated against Mr. Wagner in two respects. So I wanted to ask you because you mentioned the potential illegality of the regulatory authority. I don't remember the state agency making an argument that the Minnesota Pollution Control Agency didn't have an authority, that there's no regulatory argument, there's no argument that they've ceded their authority or anything like that. Am I right about that? Your Honor, there is no argument that they actually succeeded in asserting that authority, but the context of their repeated efforts to assert that authority and of Mr. Wagner standing up and fighting against their attempts to do so form a part of the constitutionally protected activities that gave rise to the retaliation here. So again, that is one of the constitutionally protected activities. Mr. Wagner's consistent pattern of challenging agency decisions through challenges to alleged violations, through exercising his administrative procedure rights to challenge penalties, and secondly to petition the legislature to clarify the law. And both of those are protected activities. The district court in this case recognized that the actions here could chill, so we're really dealing with the third prong of a retaliation claim. We have constitutionally protected activity. We have the adverse actions of the agency that would chill a person of ordinary firmness. And those actions here, as alleged in the amended complaint, are number one, the withholding of a modified permit for Mr. Wagner's fee bot in violation of the MPCA's applicable regulations, and number two, the attempt to impose what would be the largest penalty the MPCA has ever imposed against a fee bot after alleged violations at the fee bot. And that proceeding is actually still pending, scheduled for trial next month. But the issue is, and I want to clarify this up front, it's not the fact of an enforcement action. It is the completely unreasonable penalty amount that the agency has sought here. Again, it would be the highest penalty they have ever imposed on a fee bot in Minnesota for alleged violations that do not involve any documented environmental harm. I mean, that's when they're being opposed to the district court, in the sense that these regulatory actions took place two or four years after the underlying innovation of the first amendment, like the speech that actually supposedly caused the retaliation. So I'm wondering how you get around that timing. Your Honor, first, I would dispute the timing aspect of that. So first, we have the action in withholding the permit in violation of state statute. That action occurred at the same time that Mr. Wagner was contesting the agency's attempt to impose penalties on his past year and their assertion of regulatory authority over the past year. So those immediately overlap. I suggest that the agency's authority occurred in 2014 and 2015 and withholding the permit in August 2017. Are you saying that it was the guy's wrong and that they actually came, they were simultaneous with each other? Your Honor, there are a pattern of three actions that arise from the that started with an alleged violations letter in 2014, another one in 2015, but as relevant here, I would point the court to the 2015 one in paragraph 32 of the amended complaint that actually was settled and resolved in October of 2016. So there was an action that went from 2015 into late 2016. On May 3rd, and this is paragraph 45 of the amended complaint, on May 3rd, 2017, the MPCA conducted an inspection of Mr. Wagner's past years. Paragraph 47, May 23rd, 2017, they issued alleged violation letters related to alleged violations at the pasture found during those inspections. An administrative order was eventually issued in November 6th, 2017. That's paragraph 50. And ultimately, that was not resolved excuse me, March 12, 2019, this is paragraph 53, they issued penalty orders arising from that May 3rd inspection, three orders there. A permit issue began in May of 2017 and was resolved in November 20, 2018. That's paragraph 65. So that last enforcement action, beginning with the inspection in May 2013, was not actually resolved until well after the permit thing was resolved. So in that case, there was a direct overlap of the enforcement action. With respect to the... With the speech though, I mean, I did want to follow up on that. From your timeline, it sounded like the speech ended in 2016, even by your timeline, and then the withholding of the permit was 2017. Am I missing some other speech? Yes, Your Honor. Mr. Wagner commenced an administrative proceeding to challenge penalties. He engaged in repeated letters saying, I have not violated the past year rules. After they issued penalty orders, he commenced administrative actions, and those administrative proceedings were continuing throughout that time. So the complaint details multiple communications in that time. On the legislature, we have him petitioning the legislature during the 2019 legislative session and special session. We do have a gap until 2021, when the state court enforcement action was commenced. But the document that's referenced in paragraph 82, which we believe recites direct evidence of retaliation, is dated January of 2020. And of course, in that time for March 2020, into early 2021, we had a pandemic with limited agency overview, limited agency activity. So in the context here, a two-year gap isn't a two-year gap as it may be in normal times, when a year of that is taken up when everybody was dealing with a pandemic. And that is context that is critically important to understanding the time frame. I do want to touch on that paragraph 82, and I'm running short on time, but this is critically important. In paragraph 82, we reference internal agency documents, specific documents that we believe constitute direct evidence of retaliation. We don't attach the document and the district court, in essence, dismissed our claim because we did not, at the pleading stage, come forward with evidence. That is not the pleading standard. We specifically reference internal agency documents. We describe and in fact quote from those documents. And we know that the description was sufficient to put the agency on notice because the agency's attorney at the district court hearing referred to and described the document. So everybody knows the document that we're referring to. There is sufficient notice here to meet the notice pleading standard and plausibly allege direct evidence of retaliation. And the evidence we have on that is this is a document that was prepared to advise the governor's related to the proposed penalty that they were going to seek. Again, the largest penalty that would be imposed on a fee bot. And in this, there is a slide where they specifically state, and this is quoted, Joe Wagner is the individual behind the legislation last year that added to the definition of pasture. So we quote that language. It directly ties the penalty that they're seeking, the largest penalty ever, to his legislative speech. So, your honor, we believe that that satisfies the notice pleading standard under Iqbal Twombly. With that, I'd like to reserve my last two minutes for rebuttal. Very well, thank you. Were they aptly? Ms. Brown? Thank you, your honor. May it please the court. My name is Christina Brown, and I'm counsel for appellees Lisa Schreier, Randall Hookreid, Rachel Studansky, and Scott Schroeder. Now, as Mr. Berger has indicated, this case is the result of over a decade of turmoil between Mr. Wagner and employees of the Minnesota Pollution Control Agency. At times, the MPCA has taken enforcement actions in response to Mr. Wagner's violations of state and federal law. Now, all of those violations unsurprisingly, Mr. Wagner, like I think most people, feel that government enforcement actions against them are unwarranted and unjust. But to pursue a case in federal court, parties like Mr. Wagner must support these feelings with facts. Specifically, they must allege factual content that makes their claims of government overreach not only conceivable, but plausible. And here, the district court properly dismissed Mr. Wagner's amended complaint for failing to meet this standard, and this court should affirm for two reasons. The first is that Mr. Wagner fails to allege an adequate connection between the appellee's alleged retaliatory conduct and the exercise of First Amendment rights. And the second is because Minnesota law does not create a protected property interest in an application to modify an NPDES permit. So, I'll turn first to Mr. Wagner's retaliation claim. And here, the party's dispute really boils down to two issues. And one is whether the allegation of internal agency documents that Mr. Berger just referenced in and of itself plausibly pleads retaliation. And the second would be whether at this stage, the court may address whether appellees are the but-for cause of Mr. Wagner's alleged injuries. So, as to the internal documents, I do want to address Mr. Berger's argument or Mr. Wagner's argument that the appellees know what documents he's referring to. So, were everyone sufficiently on notice, no harm, no foul. I did at oral argument before the district court say, I think I know what this is from, but Mr. Wagner references many documents. So, it is possible that appellees know what documents he refers to, but it's also possible that they don't. And that's the problem. The only information that was provided about these internal documents is that one identifies Mr. Wagner as the person behind the change in the definition of pasture. And Mr. Wagner asserts this one allegation is plausibly alleges retaliatory conduct, and he relies on the L.L. Nelson case for that support. And in that case, there was a plaintiff that alleged defendant stated she was going to put the plaintiff out of business. The court in that case relied on more than just a single statement. It relied upon allegations that the defendant did things like creating a mover's referral list to put the plaintiff at the bottom. And also, the defendant would call tenants facing eviction until it told them to move out, which resulted in less moving business for the plaintiff. And so, it was all of these actions together with the defendant's statement that the court held plausibly pleaded retaliation. And it's very different here. The court doesn't know what these documents are, what they say, how the appellees are connected to these documents, or even the documents date. And it's also important to note that there are no allegations in the complaint that the appellees were upset by this legislative change. It's a factual statement. The MPCA and Appellees by Association, they're used to Minnesotans contacting their state legislators. The agency has a legislative liaison specifically for this purpose. So, Mr. Wagner needed to have alleged more than just the documents made a factual statement. He needed to have alleged how these documents plausibly inferred retaliation, and he didn't do so. Counsel, isn't it the fact that that statement was found in the administrator's own file that makes it a little more than what you just described? I mean, what business does that comment or that observation have to be in the record of an administrative agency that has power to assess or cause to be assessed substantial monetary penalties against a citizen? Understood, Your Honor. And that comment was a heads-up to an individual, Greta Gauthier-Sheaves, legislative liaison. The agency has received calls from state legislators on Mr. Wagner's behalf in the past. And so, if litigation was to commence, she would likely get more phone calls. So, that was context provided to legislative liaison to say, hey, as a heads-up, if this goes forward, you might be getting contacted. And that was the context, Your Honor. So, well, if that's the case, isn't that something that should be developed on a rather than speculated in the motion to dismiss stage? Well, I think, Your Honor, that gets to my next point, actually, which is that, which goes towards the but-for cause of Mr. Wagner's alleged injuries. So, even if the court says, well, this internal agency allegation, he can rely on that to plead his claim, he still doesn't and can't plausibly plead that the appellees are the but-for cause of his injuries. Mr. Wagner relies on an Eighth Circuit case, which is the Norgren case, to argue that this court can't reach that issue at the motion to dismiss stage, whether they are the but-for cause. But that's not what Norgren says. There, in that case, the government argued, and I'm quoting from their brief, that, viewing the pleadings as a whole, this court should conclude that the plaintiff was not qualified for the position. So there, in other words, the government was asking the court to engage in fact-finding and weigh the credibility of evidence or allegations. But here, the appellees, they're not asking the court to engage in any fact-finding. Instead, what the appellees are asserting is that Mr. Wagner fails to meet minimum pleading standards because we have a very unique situation where the amended complaint embraces and incorporates documents that are fatal to this retaliation claim. And there's really two specific things that do that. And the first is that the amended complaint addresses and embraces this November 2017 final administrative order that was not appealed and contains detailed factual findings about Mr. Wagner's noncompliance that preceded the issues with his permit application. And the second is that the amended complaint addresses the ongoing state court litigation. And there, the court found, based on Mr. Wagner's own admissions, that he violated his NPDES permit. So it's a different situation here. We don't have allegations that require the court to engage in fact-finding. And there's nothing that's in Norgren that overrules Iqbal or other precedent that says the court doesn't have to ignore obvious alternative explanations for alleged retaliatory conduct at the motion to dismiss stage. Can I ask you about the timing that I asked opposing counsel? I think that as to the second connection between the protected speech and the alleged retaliation, I think counsel admits it's almost two years, but a year of that was COVID. So I'm not as interested in that. What I am interested in is the timing of the first one where you say the state action was ongoing. My understanding, I just want to understand whether or not there was still speech going on under your view of the complaint by 2017 when the first alleged retaliatory action took place. And the first alleged retaliatory action, we're talking about the permit modification withholding, correct, Your Honor? Yeah. So that was in 2018, in August of 2018, when the decision was made that the agency could not reissue or grant Mr. Wagner's permit modification application. The alleged violations were addressed, happened in 2017. The administrative order was issued. That was not appealed. And then APOs were issued in 2018. And those were ultimately resolved in 2020. So what I'm getting at, and maybe I'll make it simpler, is is there temporal proximity, which is a consideration in some of our cases of First Amendment retaliation, between the underlying speech, the litigation, petitioning your government for redress, and the alleged retaliatory action in your view? And I'm sorry, Your Honor, I misspoke as to the year. The August 2017 is when the permit modification was withheld. So you were correct, Your Honor, and the APOs were issued in 2018, which were after that. So I don't think there's temporal proximity there, because the permit withholding happened in August 2017. The APO appeals happened in 2018. And just by definition, retaliation requires a condition precedent. So if those are... And you don't buy the fact that all of this was ongoing. I think that's opposing counsel's view. All this started in 2014, 2015, and it was ongoing through 2018. Well, I think that, I should say, after a retaliation claim, the government has to be retaliating in response to the exercise of a First Amendment right. So there are ongoing conversations. There are informal negotiations and things like that. But you need to identify what is the protected activity. And there's really... The protected activities here have been appealing APOs, filing lawsuits in district courts, petitioning the legislature, and there's a caveat to that one. But it's not just everything. And if you look at the case law, there's the Davidson case, where they do look at the, quote unquote, totality of the evidence. But what they're looking at are the specific pinpoints when First Amendment speech occurred and when the retaliatory conduct occurred. So there, there was three to four instances of an individual applying for a position and not getting the position. And those happened within months of each other. And those, the totality of those instances, they were able to say they adequately pled retaliation. But I don't think you can infer retaliation with non-protected activity over the decade. It needs to be more precise than that. And so getting back to, I'm sorry, my point about the self-defeating nature of the complaint, I did want to touch on quickly that there's also an additional argument by Mr. Wagner that the appellees can still be held liable for retaliatory conduct, even if there is a valid basis for their actions. And that is an incorrect statement or application of the standard. What Mr. Wagner is referring to there is selective prosecution. And that happens when a plaintiff says, hey, I may have committed a violation, but you are enforcing this law against me that you have never enforced against anybody else. And so that in and of itself is retaliatory. And there's nothing here in the complaint that says the MPCA isn't taking enforcement actions against other people. They're not enforcing permit terms. They're not enforcing the same laws they enforce against Mr. Wagner. The complaint is lacking in any of that. And I did want to also address the arguments regarding the size of the penalty. And Mr. Wagner did allege it is the largest penalty the agency has sought in its feedlot program history, but state law cuts against any inference of retaliation as to the penalty amount. Minnesota Statute 115-071 Subdivision 3 contains the MPCA's authority for pursuing civil actions where a civil penalty may be awarded by the court. But that's the imperative part is that district court is the one who awards the penalty and decides what's appropriate. The MPCA has to go improve up its case and bring evidence. And then ultimately the district court has wide discretion to determine what that penalty should be. So it's not an accurate statement of the law to say or to infer that the MPCA gets to decide to impose this large penalty that belongs to the district court. Now the MPCA does have authority to initiate a lawsuit, but again, the complaint is lacking any allegations that the MPCA is not initiating lawsuits and enforcing its rules against other people. I want to quickly turn to Mr. Wagner's procedural due process arguments. Mr. Wagner cannot adequately allege that he has a protected interest in his NPDES permit modification. I think this court is probably well aware that it does not create protected property interests in things like permits when the government has discretion about whether to issue it. And here state law is clear that the MPCA may only issue a permit modification after it determines that a permittee will comply with the law. And that's very similar to the Austell case that was cited by the district court that Missouri statute contains similar language, which says upon determination of the applicant's continued compliance, an official license shall be granted. And there, that was enough discretion to make determinations about the permittee or licensee's likelihood to comply that a property interest did not arise. So in summation, your honors, Mr. Wagner failed to plausibly allege causation for his retaliation claim and he lacked a protected property interest in his NPDES permit modification application. And the appellees will respectfully request the court affirm the dismissal of the amended complaint. All right. Thank you very much counsel. And Mr. Berger, you have some time left for rebuttal. Thank you, your honor. A couple of brief points before I turn to the property interest. Judge Strauss, on your timeline, I would point you in particular to paragraphs 48 and 51 of the amended complaint, which specifically referred to communications Mr. Wagner made in the ongoing administrative proceedings during 2017 while his permit was being withheld. Ms. Brown hushed on this at the end, but the argument that because they can bring an enforcement action, the court can ignore the sheer volume of the penalty they're seeking is a straw man. The penalty far exceeds anything they've done before here, would be the largest in history, and the agency chose to pursue this in district court rather than pursuing an administrative penalty, which they can and have done. And they chose, the defendants chose, how much to ask the district court to impose. So while the district court has the final say, the action here in seeking this size of the penalty is the retaliation. On the property interest, very briefly, a permit modification is different than an initial permit issuance. The agency's scope of review is far more limited. It's limited to what is being modified, and there's no indication or claim by the agency that anything about the size of buildings or which fields manure would be applied to. Compliance with that has anything to do with the enforcement actions that they've taken here on the pastures. There's simply no connection, and they've said it was tied to the pastures, not tied to the future compliance. My time's up. We ask you to reverse and remand. Thank you. All right, counsel. Thank you very much. We appreciate your arguments this afternoon. Case is submitted, and we will render a decision in due course. Ms. Rudolph, does that conclude our calendar for this afternoon? Yes, it does, your honor.